Good morning, Your Honors. I'm Christian Nagy. May it please the Court, I'm speaking on behalf of Tunecore. We're here because the motion to compel arbitration was wrongly decided by the District Court. The Court decided to split the series of arbitration agreements that give rise to this action. We had a relationship developing between Caterine and Tunecore over the course of many years that culminated in a grant of stock options in 2012 that submit the entirety of that relationship to the Court. Tunecore maintains that the language... That's your interpretation, but that's not actually what the arbitration clause says. The arbitration clause uses the terminology related to, and that is a broad construction... I've never seen arbitration clauses say everything having to do with a relationship between the parties or everything having to do with all agreements between the parties. It says this option agreement. Now, you can argue that related to expands that, but the clause is hardly clear in defining it as you've just defined it. We can break it down, Your Honor, to what relating to might have suggested. Relating to the could pertain to it modifies the interpretation. It modifies the option agreement itself. It could modify the option in the singular. It modifies the terms of the option exercise agreement. But what's really important here was at the time that that agreement was entered into, there were no other extant option rights that Caterine could have exercised. That's another legal conclusion you're reaching, but isn't clear from the face of the agreement. There is nothing, for example, in the 2012 option agreement that says this supersedes all preceding agreements. To the contrary, it appears to make a point of saying this is in addition to and not in lieu of. So you can give me your conclusion, but I think it's far from clear that that's actually what the agreement says. The language in addition to and in lieu of is a matter of interpretation. That what compensation Did you call it surplusage? It's a matter of interpretation. It was for the arbitrator to determine what other compensation was available to them. Well, that's still another issue. Why is it for the arbitrator to determine the arbitrability? Because the FAA says it's for the arbitrator to determine the arbitrability. No, it doesn't. That's a bit of a stretch. The law is quite to the contrary. The Supreme Court said more than once that the agreement isn't clear. If the agreement doesn't assign to the arbitrator the authority to decide arbitrability and what issues that are re-arbitrated, in the first instance, it's usually for the court. Here we feel that the court made an error, that it wasn't unclear, that this was a history Well, so point to me the language in the arbitration agreement that says it's for the arbitrator to decide what issues are to be arbitrated. It was for the arbitrator to decide issues of interpretation. The question is to point me to the language. I can say that the arbitration clause It's not there, is it? You're arguing by interpretation, but again, I've seen agreements that specifically spell that out, and that kind of language is not contained here. What it does contain, however, is a waiver of all jury trial rights as to anything related, and that waiver is even broader than the arbitration clause. The parties agreed to waive jury trial as to anything even remotely connected to the option. It doesn't use the word remotely, does it? It says in any way whatsoever connected to. And waiving a jury trial actually suggests something other than arbitration, because if you've got arbitration, there's never a discussion about jury trial. Indeed, that seems to me to suggest if there is an effective jury waiver, you're looking at a bench trial. If you had an arbitration clause that clearly covered it, there wouldn't be a trial of any kind. It was contained within paragraph 15.3 of the arbitration clause, so that waiver is contextually related to the parties' agreement to arbitrate any controversy arising out of it. Let me put the question in the abstract. If you had an ironclad agreement to arbitrate, why would there ever be a need to talk about jury? It's a waiver. I mean, it's being stated in the option. Right. Why would there ever be a need to talk about waiver of a jury trial? Because you wouldn't have a trial at all. The fact that the provision says waive jury suggests to me that there must be a context in which the parties anticipated a trial, which suggests that the arbitration clause isn't as sweeping and ironclad as you have argued, because if it were, you'd never have a trial and would have no need to refer to a jury. There is a second issue. Can you answer that question? Is there a response to that proposition? I disagree. I don't think that because the waiver of the jury trial is contextually, I mean, I don't know that that by negative implication means that there would have been a court trial or that there would have been a bench trial. This is fairly simple. If there is an arbitration clause that precludes the possibility of any trial, why do the parties refer to a jury or to a waiver of a jury? You just never go there because there's never going to be a trial. You talk about waiver of a jury only if you anticipate the possibility of a trial. And the possibility of a trial suggests that the arbitration clause is not so sweeping. I have to respectfully disagree. You can disagree, but you better give me a reason. Otherwise, your disagreement is not going to move me. I will give you a reason. There is a relationship here and the pleadings have to determine which disputes or which controversies are submitted to arbitration. The relationship here spans many years. As pled, it is a options in lieu of compensation. We disagree with that, but that's the nature of the dispute. It is never severable into silos that arise out of each individual option agreement. So we're not talking about several disputes. We're talking about... Look at the arbitration clause. Does it say all option agreements or does it say this option agreement? It says this option agreement. So how does that preclude the silos? This option agreement was entered into at a time when there were no other option agreements extant or exercisable. There were no shares which you could have purchased in 2012. And if you persuade the trier of fact of that, you're going to win. But that's not something that's been stipulated to by opposing counsel. To incore substantial defense, the substance of our defense is that this was a relationship that spanned years. There were seven agreements, pardon me, only one of which is extant. That's the 2012 agreement. That, under the section two of the FAA, the parties agreed to submit an existing controversy to arbitration. There were no other rights. There were no prior rights. So how is that consistent with the language in addition to and not in lieu of? To the extent that Mr. Caterine argues that he is owed something and he himself disagrees with the district court's interpretation of that language in addition to and in lieu of at paragraph 10 of his declaration. He says that's not, in fact, what we agree to at all. I'm putting words in his mouth, but he said this is an incorrect reading. The district court later adopted that very reading and said, oh, this is intended on its face to supplement any other forms of compensation. But it was for the arbitrator to decide what monies were owed to him since it appears that that was the outstanding dispute that the parties submitted to arbitration. So, I mean, as of 2011, he had stepped down from the company. So all of these options had expired. And if you prevail on that, you're going to win. But why should we take that as a given at this point? Because there is, I think, a last-in-time argument to be made under Section 2 that an existing controversy was submitted to arbitration and that this final agreement culminated with the summa of the parties' interactions. He was no longer providing services for the company. It vested on a date certain. It expired on a date certain. It was intended to encapsulate all of the rights owed. Can you show me any writing, any agreement of the parties that says that? And if the answer is no, then it seems to me that's the issue to be litigated. I don't disagree with your proposition that if you win on that issue, you're going to win broadly. But I don't see something where if the parties intended this last agreement to supersede everything before, I don't see anything signed by the plaintiff that says that. And indeed, as Judge Gleeson has pointed out, there is language that seems to be in tension with that, which is in the agreement the parties signed. Well, the parties agreed. I think it's a prospective agreement, an agreement to prospectively arbitrate any disputes that arise. It doesn't have retroactive application. Well, doesn't that run counter to your whole argument? If it doesn't have retroactive application, then why are you seeking to apply it to the pre-2009 agreement? Because all of those agreements were, A, they no longer existed. They ceased to exist. They weren't residual rights. We can see that on the face of the evidence. He has no extant rights as an employee, as a purported or presumed stockholder. The only agreement that they entered into in 2012 provided all of the rights in which he's now claiming is owed to him. And I think as a matter of evidence, that's clear by virtue of the fact that, you know, we've produced evidence that they were replacements. These are replacement options. So they did subsume the prior shares that were available to him. You just told us you've presented evidence, but that's not all that's on the table. And you're really asking us to presume the conclusion you've argued for. So I come back to what I observed before. If you prevail on that, if your evidence is deemed persuasive, then you're going to win. But at this stage, that's not a resolved issue. So how is it we can say, well, we can just disregard all the earlier agreements if we have a request, they have a lawsuit filed by plaintiff asserting claims on the prior agreements, that needs to be adjudicated. If you bring a motion for summary judgment and win on the argument that there's no evidence to support the proposition that the prior agreements are still effective, you're going to win. But now we're trying to figure out who adjudicates that. And I don't really understand how the court should be required to accept your factual argument and reach a conclusion as to arbitration. Did you want to save some time for rebuttal? I would. Okay, you've got three minutes and 35 seconds. I will reserve the remainder, Your Honor. Okay. Morning, may it please the court. My name is Jason Albert Archinoco. You've got 15 minutes, but you don't have to use it all. Thank you, and I'm going to try not to. Can I ask you about paragraph 10 of the Caterine Declaration? What is incorrect there from Mr. Caterine's perspective? Despite the fact that I was being compensated for past due amounts, the option agreement incorrectly stated that it was being granted to me in addition to, not in lieu of, any other form of compensation. Excuse me, I'm sorry, I don't have the paragraph in front of me. Well, as I understand it, Mr. Caterine takes issue with the judge's interpretation of the phrase, or says the option agreement is incorrect with regard to in addition to and not in lieu of. I'm looking at 161 of the excerpt. I believe, though, I've cited the court to, on page six of my brief, I've cited you to the record at page 181, paragraph 109. All right. Caterine relied on the actual language of the option agreement itself that made it clear that the options were not a replacement for Caterine's prior options, but a new award. All right, thank you. I'm sorry if there's any confusion. No, no, that's fine. I just wanted to state first, my law firm went through a name change. It's the Archinoco Firm LLC right now. So I wanted to note that. First, in 23 years of practice, I've never argued before a circuit court. And the first thing I wanted to simply say, I prepared a couple of things to say, maybe not even touching on the law as much as just simply saying that it's an incredible honor to be here. Well, I have a question for you. Yes. So in the arbitration clause, it does say relating to, right? Yes, Your Honor. So is it possible that under the 20, you know, the stock option agreement, the 20, was it 2008? Is that one that was it? There are multiple agreements, Your Honor. Well, let's talk about the one in 2008, on which the 2010 and 2012 arbitration of the stock options. Yes, there's a- Can they provide a defense to the other claims for his exercises right of option under the prior option agreements? Is there any defense for them? I believe on the state, I believe on the state of the record before you, no. Well, I'm not sure if there is affidavits or not. I believe Toon Corps is attempting to claim a defense. Based on the- The 2012 option agreement. But for some reason- But does that make it, how does that fit in with the related to clause? Well, for two points. What I find unusual about the argument is that Toon Corps does not say the 2009 option agreement, which also has an arbitration clause, the exact same one, provides them a defense. So while Toon Corps will claim that the 2012 agreement, quote unquote, provides them a defense, they don't make the same argument about the 2009 option agreement as if it doesn't exist. And that's because in both of those agreements, there's no S. It just says option. It says in both agreements, the language, it's devoid of an S. Which one are you talking about now? In both agreements. The 2000 and- 2009 and 2012. Both agreements are devoid of an S. In other words, the language says that any, the controversies arising out of or related to this option agreement. And then later on, it says also any other controversy arising out of or related to the option. So these two, these last two agreements are tied to the stock incentive plan. 2008 stock incentive plan, correct. Okay. And there's no evidence that we have right now that is admissible or anything else that the 2008 plan superseded the prior plans. That's what I was going to ask. Correct. In fact, Toon Corps can test that. It depends, I guess, on what day of the week it is sometimes. Toon Corps sometimes seems to suggest that there was a, that the 2000 plan superseded it. But what they realized, well, let me go back a second. Toon Corps says the 2008 plan did not supersede the other plans. The reason Toon Corps says that is because in the 2008 plan, there was a specific written disassociation clause in there. And so they didn't comply with that. They never disassociated my clients. So Toon Corps doesn't want the 2008 plan to apply by virtue of that being in there because that destroys or harms or eliminates their defense. So as a result, Toon Corps' position is it did not supersede the earlier plans. So in other words, the 2009 and 2012 options unequivocally do arise under the 2008 plan. However, the earlier options arise under the earlier plans. There was a 2005 and a 2006 plan of the predecessor company, Your Toons. And there was no update to change the name on the plans, per se, but. Okay. Thank you. Is there some risk in your mind of inconsistent results if the arbitrator were to take just a portion of the party's dispute in the court, another portion, and then each view the evidence differently? No. I don't. I don't agree. Well, I don't agree. I don't agree, unless it's a trick question for me, I hope. Maybe I should be agreeing. I don't know at this point. But I think the answer to that question is no. And the reason for that is that the 2009 option agreement, which is subject to the 2008 plan, is before arbitration. And in that agreement, in the 2009 agreement that's based on the 2008 plan, the arbitrator will interpret the language of the 2008 plan and make a decision about whether or not the 2009 options have expired. The 2012 options, to be clear to this court, my client has never filed a lawsuit over. Now, they have been transferred to the arbitration, and it raises the issue of, well, maybe in the arbitration now, maybe, you know, a greedy plaintiff attorney is going to run in there and try to say he's entitled to those, too. But the 2012 option agreement only had a one-year exercise term. All right. So there is still an argument I can make, by the way, to the arbitrator on that, which was simply that it may be a forfeiture clause for vested rights and that that may violate wage laws. But I don't see anything. That's for the arbitrator. That's for the arbitrator. All right. But there do seem to be issues that could be raised in, now that we have a split action, in the arbitration and could come up in whatever happens in court, too. Has the arbitration proceeded, or is there any sequencing issue? Well, you know, there's something, I don't know what's going on there, to be candid with you. I haven't had the time to investigate it. I've been fairly busy with some other matters and this as well, but the substantive matter. Originally, the Tune Corps wouldn't pay the fee. So in other words, I couldn't even initiate the, I attempted to initiate the arbitration that they wanted to compel. And I almost actually amended the complaint in this matter to include a breach of contract count because they refused to pay the fee to even allow me to initiate it. So then the fee was paid. And now we do have an arbitrator. She might be a former judge or, you know, she looks to be very competent. She looks to be very competent. But for some reason, the arbitration is just frozen. I don't know what caused it. It is with JAMS, and I do know some of the principles there. So I don't think there's a fear that JAMS will somehow throw out the case through some technicality. But the case is frozen. It just has never proceeded. So we don't have, what I was concerned about really is that something did move forward and you've got an adjudication or you're near the end of an adjudication on that proceeding. But it sounds like that's not. No, that one seems to be frozen for whatever reason, I don't know. The district court proceeding were set for trial to begin December 4th. So we've already gotten some re-judgment rulings and some other things. A few weeks from now? Yes, Your Honor. So that's, and there's no schedule for the arbitration. So it sounds like the court proceeding is going to go first. Yes, Your Honor. Anything else? The only thing I wanted to say, I just wanted to mention a couple of things since I'm here. I don't need to curry any favor with the court in any way. Just simply, it's been 23 years. So I'm here in the Ninth Circuit. First, I went to law school at Boston University and a professor named Professor Hugh Baxter was one of my mentors there. I haven't spoken to him since. But I will tell you I sent him an email last night to tell him I was arguing here today. And Professor Baxter gave us a Supreme Court decision-making class and it turned out to be one of the best things in the world because I was able to trust my own writing as a result of it. So I wanted to mention him. He had courted for Justice Skinberg twice, so to me that's important. Number two is I wanted to thank... Do you have any other points you want to make on your argument? No. The only thing I wanted to say was thank you to Margaret Corrigan who served as a mediator. Thank you, Your Honor. I appreciate it. And I've reserved time in case rebuttal is necessary. Your time, you're through. Thank you. Rebuttal is only for the appellate. I'm here to take my nox. I have to say that relating to must be given some meaning. If we're just ignoring it, if the clause said arising from this option. Controversy arising out of or related to the option. It doesn't say to options. It doesn't say to all prior options. It doesn't say the relationship between the parties. So, yes, relating to is a broad. In our case law, there are narrow and there are broad. And relating to is broad. But that doesn't necessarily mean as big as all outdoors. So what makes this clause apply to the previous option agreements? It doesn't say that here. The Ninth Circuit says the quintessence of the dispute must need only touch the substance of the arbitration clause. So here we have a situation where the parties had intended that this 2012 option agreement essentially acted as a second chance. So you make the argument the parties have intended. But it's easy to say that. And this doesn't say that. So how do I infer from that the parties, plural, intended what you're articulating? I admit that I'm asking the court to examine the plural evidence that's in the record. Scott Ackerman said. Can we do that? Absolutely you can. Isn't there an integration clause that would preclude consideration of the plural evidence? I don't believe there is. I thought there was. I thought there was. All right. I don't see one. I haven't seen one. All right. In any event, the term also modifies exercise agreement and includes any statutory or federal claims that might be made under actually state or federal statutory claims, which is what was brought here. Initially this was a wage claim under Massachusetts law. So the quintessence of the dispute and examining the other evidence that is before the court, there is, I think, strong presumption that this 2012 option agreement was intended to give Mr. Katerine a second chance to invest in the company. And by doing that, he had no prior rights at that time that this is the only dispute at issue and the only way for TUNCOR to receive an adequate and broad understanding without any collateral estoppel problems is to have it tried in one forum, and that forum would be arbitration. Let me ask you. My notes say that the 2012 agreement contains a pretty standard, what looks to me to be a pretty standard, integration clause, providing that the option agreement and the plan together constitute the entire agreement and supersede all prior understandings and agreements written or oral of parties hereto with respect to the subject matter hereof. Now, I can see how that gets used in an argument with regard to the viability of plaintiff's claims regarding earlier agreements. But it does seem to suggest that we don't go outside the agreement, which would seem to close the door on parole evidence. What am I missing? We look at the option on its face, and we see that there's a time certain for exercise and a time certain for vesting. We see that the other option agreements had a clear vesting schedule. We know that he was no longer with the company, and we know that the amount of options, stock shares that he could have optioned under the 2012 agreement were roughly $205,000, the amount, 205 shares. I'm sorry, 205,000 shares. So that is the amount that had vested under the prior six agreements. So looking strictly at the face of the option agreements, we can come to the conclusion that the 2012 agreement subsumed all prior controversies, that any existing controversy was submitted prospectively to arbitration. Okay. I think we understand your argument. Thank you very much. Thank you. The matter is submitted. We appreciate your arguments this morning.
judges: Paez, Clifton, Gleason